951 So.2d 372 (2007)
STATE of Louisiana
v.
Patrick B. THOMAS.
No. 06-KA-654.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 2007.
*375 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Martin A. Belanger, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Defendant, Patrick Thomas, appeals his conviction and sentence on a charge of distribution of cocaine, a violation of La. R.S. 40:967 A. For the reasons that follow, we affirm the conviction and sentence and remand the matter for compliance with instructions herein.
On October 15, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant with distribution of cocaine within one thousand feet of a school, a violation of La. R.S. 40:981.3. On June 24, 2004, the State amended the charge to distribution of cocaine. Defendant was arraigned on the amended charge, and pled not guilty. On the same day, the trial court denied defendant's motion to suppress identification, and defendant was tried before a twelve-person jury and was found guilty as charged.
On July 19, 2004, the trial court sentenced defendant to imprisonment at hard labor for eighteen years, the first two years of which would be served without *376 benefit of parole, probation, and suspension of sentence. On that day, the State filed a habitual offender bill of information, alleging defendant was a third felony offender. Defendant denied the allegations in the habitual offender bill. Following a habitual offender hearing, the trial court found defendant to be a third felony offender. On May 31, 2005, the trial court vacated defendant's original sentence, and imposed an enhanced sentence of life imprisonment without benefit of parole, probation, and suspension of sentence. This timely appeal follows.
Agent Josh Bell of the Jefferson Parish Sheriff's Office testified that on September 9, 2003, he was part of an undercover narcotics operation. He was instructed by his supervisor, Detective Billy Matranga, to attempt drug purchases in the area of Eisman and Field Streets in Marrero. Agent Bell testified that he drove an unmarked vehicle to that area at 3:10 p.m. The vehicle was equipped with a hidden video camera and an audio transmitter.
Agent Bell observed defendant on the street and asked him if he had two "twenties," street slang for two rocks of crack cocaine. Defendant responded that he could get the crack nearby at Meyers and Fourth Streets. The agent testified he drove to that location to meet defendant, who rode a bicycle there. Defendant first met with a woman, and then handed Agent Bell two "rocks" of crack cocaine.[1] Agent Bell gave defendant two prerecorded twenty-dollar bills.
When the purchase was complete, Bell left the area. He radioed a description of defendant to surveillance officers. Agent Kim Blanche testified that fifteen minutes after the transaction, she and Deputy David Green went to the 6600 block of Field Street and located defendant based on Bell's description. The officers conducted a field interview with defendant, and collected his personal information. Agent Blanche testified that defendant became irate during the interview, yelling and using profanity. When defendant refused to calm down, the officers arrested him on a charge of disturbing the peace.
On the following morning, Agent Matranga presented Agent Bell with a photographic lineup. Agent Matranga testified that Agent Bell identified defendant as the man who had sold him two rocks of crack cocaine.
Defendant assigns three errors on appeal. He first complains that Agent Bell's photographic identification was tainted because the lineup was suggestive, and the trial court erred in denying his motion to suppress it. Defendant argues he was singled out because he was the only one of six subjects in the lineup without a prominent mustache. The State responds that all of the photographs in the lineup depicted similar looking men, and the identification procedure was not suggestive.
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive, and that there was a likelihood of misidentification. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000); State v. Thomas, 04-1341 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 901, writ denied, 05-2002 (La.2/17/06), 924 So.2d 1013. An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on *377 the defendant. State v. Thibodeaux, supra.
Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 113-114, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson, 432 U.S. at 114, 97 S.Ct. at 2253. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Id.
In determining whether the trial court's ruling on a defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at trial. Thomas, 904 So.2d at 902.
Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1145; State v. Bartley, 03-1382 (La.3/30/04), 871 So.2d 563, 573, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006. This determination is made by examining articulable features of the persons pictured such as height, weight, build, hair color, facial hair, skin color and complexion, and the shape and size of the nose, eyes, and lips. State v. Guillot, 353 So.2d 1005, 1008 (La.1977).
Agent Matranga testified at the suppression hearing that Agent Blanche provided him with defendant's name. He then prepared the photographic lineup by retrieving defendant's photograph from the "APEX" computer and obtaining five photographs of men with characteristics similar to defendant's. Agent Matranga further testified that he showed the photographic lineup to Agent Bell, and that Bell positively identified photograph number two, the one depicting defendant. Matranga said he did not indicate to Agent Bell which individual he should identify.
Agent Bell testified at the hearing that Agent Matranga showed him the photographic lineup the morning after the undercover buy. He stated that Agent Matranga did not do anything to suggest to him which individual he should identify. Agent Bell identified photograph number two as the individual from whom he bought the narcotics, and he positively identified defendant in court. When asked on cross-examination whether the individual who sold him the cocaine had a mustache, Agent Bell replied, "He may have had a small one, just unshaven." Agent Bell noted the subject in photograph number six also had a smaller mustache, while some of the other subjects had bushier mustaches. Following the hearing testimony, the trial judge denied defendant's motion to suppress identification without giving reasons.
We find that the photographic lineup in this case consists of six photographs of African-American men with similar hair-styles and facial features. The backgrounds of the photographs are similar, and three of the men, including defendant, are shown wearing white t-shirts. Although the subjects' mustaches vary in thickness, the photographic lineup does not unduly focus attention on defendant.
*378 Even if, arguendo, the lineup was suggestive, we find, based on the Manson criteria, that defendant has failed to show a substantial likelihood of misidentification. The testimony at the hearing and at trial demonstrates that Agent Bell had ample opportunity to view the perpetrator at the time of the sale. Moreover, the sale took place during daylight hours. The agent made the identification less than twenty-four hours after the transaction. Bell's and Matranga's testimony shows that Bell was certain of his identification at the time it was made, as well as when he viewed defendant in court. Defendant's first assignment of error has no merit.
In his second assignment, defendant contends the trial court erred in finding him to be a third felony offender, and moves this Court to vacate the trial court's finding. Defendant argues the trial court erred in finding his 1994 armed robbery conviction was a valid predicate offense, because there was insufficient evidence to link the fingerprints on the arrest card with the conviction. Defendant further argues the State failed to produce the Boykin[2] transcripts from either of the two alleged predicate guilty pleas. The State responds it was not required to produce the Boykin transcripts, as the guilty plea forms from the two prior convictions were sufficient proof that the prior guilty pleas were constitutionally sound.
To prove a defendant is a habitual offender, the State must initially prove the prior felony convictions, and that defendant is the same person who was convicted of the prior felonies. State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 455, writ denied, 05-1715 (La.2/10/06), 924 So.2d 161. The latter can be established by expert testimony matching the defendant's fingerprints with those from the prior proceedings. Id. When the State relies on a prior conviction that is based on a guilty plea in proving defendant's habitual offender status and defendant denies the State's habitual offender allegations, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when they were taken. State v. Shelton, 621 So.2d 769, 779-780 (La.1993).
Under Shelton, it is the State's burden to initially prove (1) the existence of the prior guilty pleas, and (2) that the defendant was represented by counsel when the pleas were taken. If the State meets that burden, the burden shifts to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant succeeds in making that showing, the burden of proving the constitutionality of the plea shifts to the State. This burden is met if the State introduces a "perfect" transcript of the taking of the guilty plea, i.e., one which reflects a colloquy in which the judge informed the defendant of, and the defendant waived his right to trial by jury, his privilege against self-incrimination, and his right of confrontation. Id.
If the State introduces anything less than a "perfect" transcript, such as a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge must weigh the evidence submitted by each party to determine whether the State has met its burden of proving the prior guilty plea was "informed and voluntary, and made with an articulated waiver of the three Boykin rights." Shelton, 621 So.2d at 780.
On July 19, 2004, the State filed a habitual offender bill of information, alleging *379 defendant to be a third felony offender. The prior felonies the State alleged were a 1994 armed robbery conviction in case number 93-6518, and a 1997 aggravated battery conviction in case number 96-1136. Both predicate convictions resulted from guilty pleas. Defendant denied the allegations in the habitual offender bill.
At the habitual offender hearing on May 10, 2005, the State produced State's Exhibit 2, in globo, which included a bill of information in case number 96-1136, along with a waiver of rights/guilty plea form, a habitual offender waiver of rights form, and an August 14, 1997 minute entry detailing defendant's guilty plea to aggravated battery. The State also produced State's Exhibit 3, in globo, which included a bill of information for case number 93-6518, a fingerprint card, an arrest register, a waiver of rights/guilty plea form, a "hard labor plea sentencing form," and a "JPSO Arrest Report and Probable Cause Affidavit."
Lieutenant Patricia Adams, an expert in fingerprint examination, testified that the fingerprints she had taken from defendant that day matched the fingerprints on the bill of information in case number 96-1136. Lieutenant Adams also testified that the fingerprints matched those on a copy of a fingerprint card in case number 93-6518. At the conclusion of Adams' testimony, defense counsel submitted the matter, noting he had filed an opposition and objections to the habitual offender bill. Counsel questioned whether defendant had been properly "Boykinized" at the time of the predicate guilty pleas. The trial court nevertheless found defendant was a third felony offender.
Defendant now argues, as he did below, that the State failed to prove he was properly "Boykinized" before entering guilty pleas to the predicate felonies. When defendant denied the allegations in the habitual offender bill, the burden shifted to the State to prove the existence of the prior guilty pleas, and that defendant was represented by counsel. The State was not, as defendant contends, required to produce Boykin transcripts to meet that burden. The certified copies of the predicate guilty pleas (including waiver of rights forms listing the three Boykin rights) produced by the State established both the existence of the guilty pleas and that defendant was represented by an attorney when he entered them. The State's production of the pertinent waiver of rights/guilty plea forms was sufficient to satisfy its burden of proof.
The burden then shifted to defendant to produce some affirmative evidence of a procedural irregularity in connection with his guilty pleas. Defendant failed to do so. Therefore, the burden did not shift back to the State to prove the guilty pleas were constitutionally sound.
Defendant further argues that there was insufficient linkage between the fingerprint card and the 1994 predicate conviction. This Court has found sufficient linkage where the State connects the fingerprint card to the arrest register and/or the bill of information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers. See, State v. Muhammad, 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 33, writ denied, 04-2082 (La.1/7/05), 891 So.2d 669, citing State v. Breaux, 00-236 (La.App. 5 Cir. 8/29/00), 767 So.2d 904, 909-910, writ denied, 00-2874 (La.6/29/01), 794 So.2d 808.
In the instant case, the fingerprint card and the arrest register were linked in several respects. Both contain the defendant's name, height, weight, sex, race, eye color, hair color, date of birth, and Bureau *380 of Identification number. The documents also list the charge as armed robbery with a gun. The arrest register is linked to the bill of information, in that both documents contain defendant's name, the charge, police item number, and "DA" number. The bill of information is linked to the hard labor plea sentencing form by defendant's name, case number, date of birth, and item number.
Based on the foregoing, we find the trial court did not err in finding defendant to be a third felony offender.
In his final assignment of error, defendant maintains his life sentence is constitutionally excessive, considering his underlying offense was not a violent offense, and he sold only two rocks of crack cocaine. Defendant suggests the trial court should have deviated below the mandatory minimum sentence under the Habitual Offender Law. Defendant also contends the trial court erred in failing to articulate reasons for the sentence in accordance with La.C.Cr.P. art. 894.1. The State responds that the trial judge did not abuse his discretion in sentencing defendant to life imprisonment, since the law required him to do so.
The record in this case does not show that defendant filed a written motion to reconsider sentence in accordance with La.C.Cr.P. art. 881.1. He did object to his sentence as excessive at the time it was imposed, but he failed to state a specific ground upon which his motion was based. He is, therefore, only entitled to a bare review for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 521. On September 9, 2003, when the underlying offense was committed, La. R.S. 15:529.1(A)(1)(b)(ii) provided:
If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Aggravated battery and armed robbery, the predicate offenses alleged in defendant's habitual offender bill, are both violent offenses under R.S. 14:2(13). The underlying felony, distribution of cocaine, is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment by more than twelve years.[3] Therefore, the trial court was required by law to impose a life sentence.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906, *381 p. 6 (La.3/4/98), 709 So.2d 672, 676; State v. Simmons, 03-1458 (La.App. 5 Cir. 5/26/04), 875 So.2d 1018, 1022, writ denied, 04-1702 (La.11/19/04), 888 So.2d 194. The Louisiana Supreme Court has recognized, however, that a mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. Johnson, supra.
In State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993), the supreme court held that when a trial court determines the minimum sentence mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge has a duty to reduce the sentence to one that would not be constitutionally excessive.
A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality. Johnson, supra. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Johnson, 709 So.2d at 676 (quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223). The Supreme Court has cautioned that downward departures from mandatory sentences should only be made in rare instances. Johnson, 709 So.2d at 676-677. The trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 384. A defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. Johnson, 709 So.2d at 676.
Defendant did not attempt to demonstrate below any exceptional circumstances to support a departure from the statutory minimum. In fact, he did not make any argument in the district court with regard to a downward departure in sentencing under Dorthey. He has, therefore, failed to carry his burden under Johnson. There is no basis for finding the habitual offender sentence constitutionally excessive. This assignment of error lacks merit.
We have reviewed the record for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). We note the following.
The trial court did not properly inform the defendant of the commencement date of the two-year period within which to file an application for post-conviction relief. At the time of the original sentencing, the court told defendant he had "two years from the date this conviction becomes final to seek post-conviction relief." At the habitual offender sentencing, the court instructed defendant that he must apply for post-conviction relief "within two years of your sentence, that your sentence becomes final." La.C.Cr.P. art. 930.8 actually provides that a defendant has two years from the date the "judgment of conviction and sentence has become final" in which to apply for post-conviction relief. We remand this matter to the trial court to properly inform defendant of the prescriptive period by sending him written *382 notice within ten days of the rendition of this opinion and to file written proof in the record that defendant received such notice. See, State v. Washington, 05-211 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1174.
We affirm defendant's conviction and sentence and remand the matter to the trial court for compliance with the instructions herein.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Daniel Waguespack, an expert in the field of forensic science, testified that he analyzed the two pieces of off-white material defendant gave Agent Bell, and the result was positive for cocaine.
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[3] La. R.S. 40:967 A provides that any person who distributes cocaine shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence.