GREG G. GUIDRY, Judge.
 

 ^Defendant, Melvin Lemon, appeals from his guilty plea conviction to possession of cocaine and his sentence as a fourth offender to 35 years at hard labor to be served without benefit of probation or suspension of sentence. For the reasons which follow, we affirm and remand.
 

 On March 21, 2007, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with possession of cocaine, a violation of La. R.S. 40:967 C. The Defendant pled not guilty at his arraignment.
 

 On November 15, 2007, the trial court held a hearing on the Defendant’s motions to suppress evidence and statement. On defense counsel’s request, the court ordered that the motions remain open pending trial.
 
 [1]
 

 
 *23
 
 |;iAt the hearing Sergeant David Short of the Jefferson Parish Sheriffs Office testified that on the afternoon of March 8, 2007, he was working in a high crime area known for drug trafficking. He was standing on Ames Boulevard watching traffic and looking for “violators.” At 4:12 p.m., Sergeant Short saw a car with a Louisiana license plate and a Texas state inspection sticker. The officer recognized this as a traffic violation, since a car registered in Louisiana is required to have a current Louisiana brake tag.
 

 Sergeant Short testified that he and Deputy Al West got into their police vehicle and performed a traffic stop. The car the officers stopped had three occupants. Sergeant Short issued a traffic citation to the driver. The vehicle’s t-top roof was open, and the officers could see inside the car. Sergeant Short testified that the Defendant, a back seat passenger, had a substance lying at his feet in plain view that appeared consistent with crack cocaine. The officers ordered all of the occupants to get out of the car, and they retrieved the suspicious substance. According to Sergeant Short, the Defendant blurted out, “That’s mine. I’ll take my lick.”
 

 Sergeant Short advised the Defendant of his Miranda
 
 [2]
 
 rights. The Defendant was transported to the Jefferson Parish Correctional Center. Sergeant Short again advised the Defendant of his rights, and reviewed a rights of arrestee form with him. The Defendant waived his rights and agreed to answer Sergeant Short’s questions. The officer typed the Defendant’s responses and showed them to him at the conclusion of the interview. The Defendant signed the statement. The written statement shows the Defendant admitted the crack cocaine in the car was his. He had purchased it earlier and had not had an opportunity to smoke it.
 

 14Following the hearing, on December 4, 2007, the Defendant withdrew his plea of not guilty and entered a guilty plea under
 
 North Carolina v. Alford,
 
 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court then sentenced the Defendant to five years at hard labor.
 

 On December 6, 2007, the State filed a habitual offender bill of information charging the Defendant as a fourth felony offender. The Defendant was arraigned on the habitual offender bill, and he plead not guilty.
 

 The trial court held a habitual offender hearing on April 14, 2008, and found the Defendant to be a fourth offender.
 
 [3]
 
 On April 28, 2008, the court vacated the Defendant’s original sentence and imposed an enhanced sentence of 35 years at hard labor without benefit of probation or suspension of sentence. The Defendant made a timely oral motion for appeal. He also filed a written motion for appeal, which the trial court granted. On appeal, the Defendant assigns two errors.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 He argues that the State failed to meet its burden of proof as to one of the predicate convictions alleged in the habitual offender bill of information. Specifically, he argues his 1994 guilty plea to aggravated
 
 *24
 
 battery, in case # 370-971, was not proven to be knowingly and voluntarily entered.
 

 The
 
 State
 
 responds that the Defendant did not challenge the validity of that guilty plea in the district court, and therefore did not preserve the issue for appeal. The State points out that at the hearing on the multiple bill, the Defendant only contested the proof relating to the April 23, 2001, guilty plea for unauthorized entry of an inhabited dwelling, in case # 00-1858.
 

 IsUpon review, we find that the Defendant did not contest the validity of the 1994 guilty plea to aggravated battery that he refers to by name in brief on appeal. A defendant must make a contemporaneous oral objection or file a written response to a habitual offender bill in order to preserve for appeal the issue of sufficiency of proof of a prior conviction based on a guilty plea.
 
 State v. Richmond,
 
 98-1015, p. 7 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 37. However, we find he did contest the validity of the 2001 plea in district court, and the transcript reference in his appellate brief is to this guilty plea proceeding. Therefore, we will address the validity of that plea since it was the only one preserved for review by timely objection and, arguably, briefed on appeal.
 

 The Defendant testified at the hearing regarding his understanding of his 2001 guilty plea, stating that he declined to provide written agreement in the blanks next to a few of the questions on the waiver of rights form because he did not undei'stand them. But when cross examined, he explained that what he didn’t understand was that the guilty plea could be used to support a multiple offender charge.
 

 To prove a defendant is a habitual offender, the State must initially prove the prior felony convictions, and that the defendant is the same person who was convicted of the prior felonies.
 
 [4]
 

 State v. Shelton,
 
 621 So.2d 769, 779-80 (La.1993);
 
 State v. Thomas,
 
 06-654, p. 7 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 378,
 
 writ denied,
 
 07-0464 (La.11/21/07), 967 So.2d 1153. The latter can be established through the use of expert testimony that the defendant’s fingerprints match those from the prior convictions.
 
 Thomas,
 
 06-654 at 7, 951 So.2d at 378. When the State relies on a prior conviction that is based on a guilty plea to prove | fithe defendant’s habitual offender status and the defendant denies the habitual offender bill, the State’s burden of proof is governed by
 
 State v. Shelton,
 
 621 So.2d 769, 779-80 (La.1993).
 

 Under
 
 Shelton,
 
 it is initially the State’s burden to prove 1) the existence of the prior guilty pleas, and 2) that the defendant was represented by counsel when the pleas were taken. If the State satisfies that burden, the burden shifts to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant makes such showing, the burden of proving the constitutionality of the plea shifts to the State. This burden is met if the State produces a “perfect” transcript of the guilty plea, i.e., one which reflects a colloquy in which the judge informed the defendant of, and the defendant waived, his right to trial by jury, his privilege against self-incrimination, and his right of confrontation.
 
 Id.,
 
 621 So.2d 779-780.
 

 If the State introduces anything less than a “perfect” transcript, such as a guilty plea form, a minute entry, an “imperfect” transcript, or any combination
 
 *25
 
 thereof, the judge must weigh the evidence submitted by each party to determine whether the State has met its burden of proving the prior guilty plea was “informed and voluntary, and made with an articulated waiver of the three
 
 Boykin
 
 rights.”
 
 Shelton,
 
 621 So.2d at 780.
 

 In this case, the State alleged in the habitual offender bill of information that the Defendant had three prior felony convictions: 1) unauthorized entry of an inhabited dwelling (La. R.S. 14:62.3) in 2001 in case number 00-4858 in Jefferson Parish; 2) possession of cocaine (La. R.S. 40:967 C) in 1996 in case number 384-454 in Orleans Parish; and 3) aggravated battery (La. R.S. 14:34) in 1994 in case number 370-971 in Orleans Parish. Evidence of the existence of each guilty plea Jjconviction and the fact that the Defendant was represented by counsel was introduced into evidence without objection.
 
 [5]
 

 The State also met its burden of proving identity at the habitual offender hearing. The State introduced a card containing fingerprints taken from Defendant in court that day and a card containing fingerprints taken from Defendant at the time of his arrest for the instant offense. The State also offered the testimony of Deputy Ais-cha Prudhomme, a latent fingerprint analyst with the Jefferson Parish Sheriffs Office, to the effect that the fingerprints on these cards matched and they matched those introduced with the submitted proof of the three prior guilty plea convictions offered in support of the habitual offender bill of information.
 

 Once the State met its initial burden under
 
 Shelton,
 
 the burden shifted to the Defendant to establish an infringement of his rights or a procedural irregularity in the taking of the challenged plea. The Defendant testified at the habitual offender regarding his guilty plea to unauthorized entry of an inhabited dwelling in 2001. The Defendant testified that the trial judge went over his rights with him, and he signed the waiver of rights form filed into evidence with the other proof of that conviction. But he testified that he did not understand all of the specified rights. Specifically, he stated that he did not understand that this conviction could be used to enhance a future felony sentence. Defense counsel asked the Defendant about the following questions from page two of the waiver of rights form:
 

 2. Do you understand the nature of the charges against you and the possible penalties? _
 

 3. (Where applicable) Do you understand the enhanced penalties in the event of a second or subsequent conviction of the same crime? _
 

 |s4. (a) Do you understand that the plea of guilty is your decision and that you have the right to plead not guilty or to maintain your plea of not guilty?
 

 (b) Do you understand that no one can force you to plead guilty?
 

 (c) Has anyone used any force, intimidation, coercion or promise of reward against either you or any member of your family for the purpose of making or forcing you to plead guilty?
 

 Although each of the questions is followed by a blank, there is only one handwritten response: a “yes” to question two. Defendant testified that he did not respond to the other questions in that sec
 
 *26
 
 tion because he did not understand them.
 
 [6]
 
 There is a blank for the Defendant’s initials following that set of questions, but the Defendant did not enter his initials in the blank.
 

 Defense counsel argued the guilty plea form for the 2001 conviction was “faulty” on its face, since the Defendant did not complete the section regarding whether he was coerced to plead guilty.
 

 The State responded, noting that on cross examination the Defendant clarified that what he did not understand was the fact that the conviction could possibly be used to enhance future felony sentences. The prosecutor argued that this claim by the Defendant was negated by the fact that he had been multiple billed prior to his 2001 guilty plea, as well as following that offense. Due to his familiarity with the criminal justice system, the State argued that the Defendant’s testimony that he did not understand that the 2001 conviction could be used to enhance a future felony sentence was self-serving and untrue. The prosecutor argued that the State had proven Defendant to be a fourth felony offender.
 

 The trial court found that the State met its burden of proof that the Defendant had been sufficiently “Boykinized,” and he had properly waived his rights before | ¡[entering the three predicate guilty pleas. The judge noted that the evidence established the Defendant’s familiarity with multiple offender proceedings before he entered the 2001 plea, and thus it discredited the Defendant’s contention that he did not know the plea could be used in a multiple offender adjudication.
 

 In reviewing the matter, we find that the first page of the guilty plea form lists the three
 
 Boykin
 
 rights, with the Defendant’s acknowledgement that he understood those rights by writing “yes” in the blank that' followed them. The form is signed by the Defendant, his attorney, and the trial judge. The Defendant’s signature appears at the end of the guilty plea form after the following passage:
 

 BY THE DEFENDANT:
 

 I, as the defendant in this case, acknowledge: (1) that the foregoing has been read to me; (2) that my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty; (3) that the trial judge has explained to me all of my rights and what rights I am waiving or giving up, as listed above, and that I have been given every opportunity by the trial judge to ask questions in open court about anything I do not understand and about all the consequences regarding my plea of guilty. I am completely satisfied with the explanation of my attorney and the trial judge.
 

 I FURTHER ACKNOWLEDGE THAT MY ACT OF PLEADING GUILTY IS A KNOWING, INTELLIGENT, FREE AND VOLUNTARY ACT ON MY PART. I know that no one can force me to plead guilty. I know that by pleading guilty I admit I committed the said crime. I know this plea of guilty is more than a confession. It is also a conviction. Nothing further remains except for the toial judge to give judgment and give me my punishment. I waive all delays for sentencing and acknowledge I am ready for sentencing. (Emphasis in the original.)
 

 The minute entry concerning this plea states that the Defendant was informed by
 
 *27
 
 the trial court of his right to a trial by judge or jury, his right to confront his accusers and his right not to incriminate himself and that- the Defendant waived those rights. The trial court was not required to advise the Defendant of the penalties for subsequent offenses prior to accepting his guilty plea.
 
 State v. Guzman,
 
 99-1753 (La.5/16/00), 769 So.2d 1158. Where the omission does not affect substantial rights of the | inaccused, it does not rise to the level of reversible error.
 
 Id.
 
 Moreover, the Defendant’s testimony, that he did not know the conviction could be used to enhance the penalty for a subsequent offense, as found by the trial judge, lacks credibility. His criminal record, with two habitual offender enhancements, clearly indicates his familiarity with the proceedings and contradicts his testimony. Therefore, we find that despite the Defendant’s testimony that he did not understand that the conviction could be used to support a multiple offender charge, the State met its burden of proving the Defendant’s 2001 guilty plea was made with a knowing waiver of the three
 
 Boykin
 
 rights and was informed and voluntary. There was no error in the trial court finding that the State adequately proved that the Defendant was a fourth felony offender.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 By this assignment of error the Defendant argues that his 35-year habitual offender sentence is constitutionally excessive because it is disproportionate to the underlying offense of cocaine possession. The State responds that the sentence is well within the statutory limits and does not represent abuse of the trial court’s sentencing discretion.
 

 Defendant objected to the sentence below, but did not state specific grounds for his objection. The Defendant also failed to file a motion to reconsider sentence in accordance with La.C.Cr.P. art. 881.1. Thus, he is entitled only to a review for constitutional excessiveness.
 
 State v. Warmack,
 
 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 108.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and lu suffering.
 
 State v. Wickem,
 
 99-1261, p. 10 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968,
 
 writ denied,
 
 00-1371 (La.2/16/01), 785 So.2d 839.
 

 In reviewing a sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice. The trial judge is afforded wide discretion in determining sentence, and the reviewing court will not set aside a sentence for excessiveness absent a clear abuse of that discretion.
 
 State v. Brown,
 
 04-230, p. 4 (La. App. 5 Cir. 7/27/04), 880 So.2d 899, 902. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 Id.
 
 In reviewing a sentence for abuse of discretion, three factors are generally considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 State v. Pearson,
 
 07-332, pp. 15-16 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
 

 Defendant’s sentencing range as a fourth offender was 20 years to life imprisonment. La. R.S. 15:529.1 A(l)(c)(i). The trial court did not give reasons for sen
 
 *28
 
 tencing, but the judge did comment, “I don’t think that [defendant’s] prior offenses are so heinous that he deserves the maximum sentence.”
 

 The record shows the Defendant has a history of cocaine offenses and has at least five prior convictions. One of the predicate convictions alleged in the habitual offender bill was for possession of cocaine in 1996. There was also evidence that Defendant had an earlier conviction for possession of cocaine, in district court case number 89-5484.
 
 [7]
 
 Defendant also had a history of violent offenses. One of the predicate convictions in his habitual offender bill was for aggravated battery.
 

 | ^Defendant’s sentence is near the lower end of the sentencing range for a fourth offender and is not outside of the normal range of sentences imposed under similar facts and circumstances. In
 
 State v. Williams,
 
 02-1016 (La.App. 5 Cir. 2/25/03), 841 So.2d 986,
 
 writ denied,
 
 03-2205 (La.8/20/04), 882 So.2d 571, this Court upheld a 30-year habitual offender sentence on a fourth offender whose underlying conviction was for possession of cocaine. In that case the defendant also had prior felony drug convictions and a conviction for a violent felony.
 
 Id.,
 
 02-1016 at 16, 841 So.2d at 936.
 

 Based on the foregoing, we find the Defendant’s sentence to 35 years at hard labor, under the circumstances presented, is not grossly disproportionate to the offense and does not impose needless and purposeless pain and suffering. We find no merit in the Defendant’s contention that the sentence is constitutionally excessive.
 

 ERROR PATENT DISCUSSION
 

 The Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920 regardless of whether a defendant makes such a request.
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 There is a discrepancy between the habitual offender commitment and the transcript. The commitment reflects that defendant “pleaded GUILTY” to the habitual offender bill, but in fact a hearing was held wherein the Defendant took issue with the State’s proof of his prior convictions. Therefore, the case must be remanded to the trial court to amend the habitual offender commitment to conform to the transcript.
 

 Accordingly, for the foregoing reasons we affirm the Defendant’s conviction for possession of cocaine and his sentence as a fourth felony offender to 35 years imprisonment at hard labor and remand the case to district court for amendment of the habitual offender commitment to conform to the transcript.
 

 AFFIRMED AND REMANDED.
 

 [1]
 

 . The record does not show that the trial court ever ruled on Defendant’s motions. Defendant waived all pending motions when he pled guilty without raising the issue that the motions had not yet been ruled on.
 
 See State
 
 v.
 
 Fletcher,
 
 02-707 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, 559,
 
 writ denied,
 
 03-409 (La. 10/10/03), 855 So.2d 334.
 

 [2]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
 

 [3]
 

 . The minute entry reflects that the trial court found the Defendant to be a fourth felony offender. Furthermore, although the trial judge does not say the words "fourth” offender, he does state that the three prior offenses as well as the instant offense have been adequately proven, clearly implying that he is finding the Defendant to be a fourth offender. Additionally, at sentencing, reference was made to the Defendant as a “quad offender.”
 

 [4]
 

 . The State must also prove that the prior convictions fall within the ten-year cleansing period prescribed by La. R.S. 15:529.1 C.
 
 State v. Guillara,
 
 04-899, p. 13 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1072,
 
 writ denied,
 
 05-1381 (La. 1/13/06), 920 So.2d 233.
 

 [5]
 

 . Mention was made of some illegible writing on the bottom of the guilty plea form for the 1996 possession of cocaine conviction. No issues regarding that conviction have been raised in this appeal.
 

 [6]
 

 . In his brief, defense counsel incorrectly re-fere to this testimony as pertaining to defendant's 1994 guilty plea to aggravated battery.
 

 [7]
 

 .
 
 See State v. Anderson,
 
 30,060, p. 4 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42, in which the Second Circuit held that past records of drug offenses weigh heavily in the decision to uphold sentences imposed in contraband possession cases.
 
 Anderson
 
 did not involve a habitual offender sentence.