MARION F. EDWARDS, Chief Judge.
| gDefendant/appellant, Terrell J. Suggs (“Suggs”), appeals his conviction of cocaine distribution within 1000 feet of a playground in violation of La. R.S. 40:981.3 and his adjudication as a third felony offender. Suggs also appeals his conviction on the multiple offender adjudication.
On May 20, 2009, the Jefferson Parish District Attorney filed a bill of information charging Suggs with distribution of cocaine within 1000 feet of a playground. Suggs was arraigned on the charge and pled not guilty. On September 3, 2009, Suggs’ motion to suppress identification was denied after a hearing. Subsequently, Suggs filed a motion for psychiatric examination. A sanity hearing was held on December 16, 2009, after which the trial judge found Suggs competent to stand trial. On that *819 same date, the trial judge granted defendant’s pro se motion for speedy trial.
The case was tried before a twelve-person jury that found Suggs guilty as charged. In due course, the trial judge sentenced Suggs to imprisonment in the Department of Corrections for thirty years, with the first two years to be served without benefit of probation, parole, or suspension of sentence. On that same day, the State filed a multiple bill alleging that Suggs was a fourth felony offender, an | ¡¡allegation which Suggs denied. A multiple bill hearing was then held after which Suggs was adjudicated a third felony offender.
The trial judge vacated the original sentence and re-sentenced Suggs under the multiple bill statute to imprisonment in the Department of Corrections for forty years with the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence, and the remainder of the sentence to be served without benefit of probation or suspension of sentence. Suggs filed a timely appeal motion that was granted by the trial court.

FACTS

On March 13, 2009, Joseph Gueldner, an undercover agent with the Jefferson Parish Sheriffs Office (“JPSO”), went to the area of Starrett and Newton Streets near Jesse Owens Playground in Jefferson Parish, a high crime area, in an attempt to purchase narcotics. He was driving an unmarked vehicle that contained audio and video equipment to record any narcotics transactions that occurred, and his actions were monitored by other officers who established surveillance in the area. Agent Gueldner successfully purchased $80 worth of crack cocaine from an individual, later identified as Suggs, on Starrett Street within 1000 feet of a playground that was marked as a “drug-free zone.” He conducted a field test on the substance Suggs sold to him, and it was positive for cocaine. The transaction was captured on videotape and shown to the jury at trial.
After obtaining a general description of the suspect, Agent Lisa Calcagno and other surveillance agents drove around for approximately an hour looking for a subject fitting the description. They subsequently located Suggs, who fit the description of the suspect, right across the street from the purchase area. After speaking with Suggs, Agent Calcagno filled out a field interview card, which contained Suggs’ name, address, and physical description, and they photographed |4him. She also positively identified Suggs in court as the person she spoke to that day.
Agent Wally Davis subsequently prepared a photographic lineup and showed it to Agent Gueldner who positively identified Suggs as the individual who sold him narcotics on the day in question. Agent Gueldner also positively identified Suggs in court as the perpetrator. Raven Barrois, a JPSO forensic chemist who was accepted as an expert in the field of the analysis of controlled dangerous substances, testified that the substance in this case tested positive for cocaine.

LAW AND ANALYSIS

Both Suggs and his appeals counsel have filed assigned errors and filed briefs in this matter. Suggs assigns four errors. He asserts the evidence was insufficient to support the conviction, and the trial court erred in denying his motion to suppress the identification. In other assignments, Suggs alleges prosecutorial misconduct, ineffective assistance of counsel, and malicious prosecution.
Defense counsel asserts the sentence imposed was illegal and excessive, or in the alternative, trial counsel was ineffective. Defense counsel also requests that this *820 Court conduct a review for errors patent on the face of the record.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

The evidence used to convict Terrell Suggs was insufficient.
| ¿DISCUSSION[1]
Suggs argues that the evidence was insufficient to support his conviction. He contends that the videotape of the transaction does not show the perpetrator’s face; there was no evidence that he intended to distribute cocaine; the State failed to exclude the possibility that he was misidentified because of his shirt; the State did not negate every reasonable possibility of mis-identification; and there was no money found on him from the transaction an hour after it occurred.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[2]
In cases involving circumstantial evidence, the trial court must instruct the jury that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”[3] The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[4]
| f,Suggs was convicted of distribution of cocaine within 1000 feet of a playground. At the time of the commission of the crime on March 13, 2009, La. R.S. 40:981.3(A)(1) provided that any person who violated a provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E of this Section.[5]
*821 Distribution of cocaine is prohibited by La. R.S. 40:967(A)(1). “School property” means all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks.[6]
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misiden-tification in order to carry its burden of proof.[7] Positive identification by only one witness is sufficient to support a conviction.[8]
At trial, the State presented evidence to show that Suggs distributed cocaine within 1000 feet of Jesse Owens playground. Agent Gueldner testified that he purchased cocaine from an individual, whom he later identified from a photographic lineup as Suggs, within 1000 feet of Jesse Owens playground. The |7agent also positively identified Suggs in court as the perpetrator. The videotape of the transaction was shown to the jury at trial. Keith Davillier, an employee of the Jefferson Parish recreation department, testified that Jefferson Parish owned Jesse Owens playground and that Jesse Owens playground was used by neighborhood children and local schools for sports.
After considering the credibility of the witnesses and weighing the evidence, the jury obviously accepted the testimony of the State’s witnesses and the identification of Suggs as the perpetrator even though the videotape did not show the perpetrator’s face and no prerecorded money was found on him.
Suggs contends that he was stopped by Agent Calcagno and subsequently misidentified solely because he was wearing the same black and white colored shirt as the perpetrator. However, in the videotape, Agent Gueldner informed the other officers over the radio, not only that the perpetrator was wearing a black T-shirt with white sleeves, but also that the perpetrator was a black male weighing 160 to 185 pounds, approximately 5'11" to 6'2" tall, 30 to 40 years old, and had a little facial hair. Agent Gueldner also informed the other officers over the radio of Suggs’ location, i.e., that he was walking toward D and D Grocery Store on Starrett. Moreover, Agent Calcagno testified that they tried to locate the seller based on the description of what clothes he was wearing and “everything else.” Therefore, Suggs’ contention that he was stopped and misidentified only because of a clothing description is without merit.
Additionally, the credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal.[9]
laBased on the foregoing, we find that the evidence was sufficient for the jury to find that the State met its burden of proving the essential elements of the crime, including the perpetrator’s identity, be *822 yond a reasonable doubt.[10] Accordingly, we find no merit in this assignment.
Because we find no merit in Suggs’ insufficiency of evidence claim, we will now review other trial errors assigned. The first assignment in defense counsel’s brief is that the trial court imposed an illegal and excessive sentence. In that assignment, it is argued that the sentence is constitutionally excessive. Counsel contends that the imposition of a forty-year enhanced sentence without particularized reasons under La.C.Cr.P. art. 894.1, and unsupported by the record, requires that the sentence be vacated and remanded to the trial court for reconsideration. Counsel notes that Suggs was offered a fifteen-year sentence prior to trial and that it was impossible to determine from the record what justification the trial judge used to increase it to forty years. She asserts that there is nothing in the record to support such a harsh sentence considering that Suggs was employed and turning his life around, had obtained a G.E.D., and planned to attend barber school.
Counsel also argues that Suggs was not given fifteen days to file objections to the multiple bill, contrary to the dictates of La. R.S. 15:529.1. Finally, counsel contends that she cannot ascertain from the record whether there was adequate proof of Suggs’ prior convictions. The State responds that Suggs has not shown that his sentence is constitutionally excessive given his particular circumstances.[11]
IgThe record shows that Suggs did not file a written motion to reconsider sentence in accordance with La.C.Cr.P. art. 881.1, nor did he object to the sentence at the time it was imposed. Therefore, he is only entitled to a bare review for constitutional excessiveness.[12]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.[13] A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.[14] A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.[15]
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.[16] The appellate court shall not set aside a sentence for excessiveness *823 if the record supports the sentence imposed.[17] In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.[18]
Defendant was convicted of distribution of cocaine within 1000 feet of a playground in violation of La. R.S. 40:981.3. Whoever violates a provision of this Section shall be punished by the imposition of the maximum fíne and be [inimprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.[19] Distribution of cocaine is a violation of La. R.S. 40:967, which provides for a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years to be served without benefit of parole, probation, or suspension of sentence. Therefore, Suggs was exposed to a sentencing range of not more than forty-five years on the underlying conviction.[20] He was sentenced to thirty years of imprisonment.
The State then filed a multiple bill alleging Suggs to be a third felony offender with two predicate convictions of possession of cocaine.[21] La. R.S. 15:529.1(A)(l)(b)(i) provides that if the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. Therefore, as a third felony offender, Suggs was exposed to a sentencing range of thirty to ninety years of imprisonment.[22] The record reflects that, after Suggs was found to be a third felony offender, his original sentence was vacated, and he was re-sentenced under the multiple bill statute to forty years of imprisonment. We do not find this sentence to be constitutionally excessive.
Defense counsel makes procedural objections to the multiple bill hearing. She indicates that the trial court erred by not giving him fifteen days to file objections to the multiple bill, contrary to the dictates of La. R.S. 15:529.1. At the multiple bill hearing on February 11, 2010, defense counsel advised the trial judge | nthat she had reviewed the multiple bill with Suggs and that she had explained the three convictions the State was attempting to use to multiple bill him. Defense counsel then denied the allegations of the multiple bill. Suggs proceeded to the hearing immediately after he was arraigned on the multiple bill without objecting thereto. Any irregularity with arraignment is waived if the defendant proceeds to trial without such an objection.[23] Furthermore, Suggs waived review of this error because he did not contemporaneously object to it.[24] Suggs does not allege any particular objec *824 tions he was not able to raise because of the failure to allow him fifteen days to respond. We find no merit in this argument.
In the second procedural objection, defense counsel questions the sufficiency of proof on the multiple bill.
To prove a defendant is an habitual offender, the State must initially prove the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies.[25] The latter can be established through the use of expert testimony that the defendant’s fingerprints match those from the prior convictions.[26] When the State relies on a prior conviction that is based on a guilty plea to prove the defendant’s habitual offender status and the defendant denies the habitual offender bill, it is initially the State’s burden to prove 1) the existence of the prior guilty pleas, and 2) that the defendant was represented by counsel when the pleas were taken.[27] If the State satisfies that burden, the burden shifts to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant makes such a | ^showing, the burden of proving the constitutionality of the plea shifts to the State. This burden is met if the State produces a “perfect” transcript of the guilty plea, i.e., one which reflects a colloquy in which the judge informed the defendant of, and the defendant waived, his right to trial by jury, his privilege against self-incrimination, and his right of confrontation.[28]
If the State introduces anything less than a “perfect” transcript, such as a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must weigh the evidence submitted by each party to determine whether the State has met its burden of proving the prior guilty plea was “informed and voluntary, and made with an articulated waiver of the three Boykin[29] rights.”[30]
In the matter before us, the State alleged in the multiple bill that Suggs had three prior felony convictions: 1) possession of cocaine (La. R.S. 40:967(C)) in 2002 in case number 02-1917 in Jefferson Parish; 2) possession of cocaine (La. R.S. 40:967(0) in 2004 in case number 03^4292 in Jefferson Parish; and 3) second offense possession of marijuana (La. R.S. 40:966(0) in 2010 in case number 08-6038 in Jefferson Parish. Evidence of the existence of each guilty plea conviction and the fact that Suggs was represented by counsel was introduced into evidence without objection.
The State also met its burden of proving identity at the multiple bill hearing. The State introduced a card containing fingerprints taken from Suggs in court that day and certified copies of the three prior convictions containing fingerprints. The *825 State offered the testimony of Aischa Prudhomme, a latent fingerprint analyst with the Jefferson Parish Sheriffs Office, to the effect that the fingerprints on the card | ismatched those introduced with the submitted proof of the three prior guilty plea convictions offered in support of the multiple bill.
Our review of the record shows that Suggs was not advised of his multiple offender rights prior to the multiple bill hearing. La. R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the information, his right to a hearing, and his right to remain silent.[31] The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.[32] Suggs denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish his multiple offender status. Therefore, we find the trial court’s failure to advise Suggs of the specific allegations against him and of his right to be tried and to remain silent was harmless error.
Once the State met its initial burden, the burden shifted to Suggs to establish an infringement of his rights or a procedural irregularity in the taking of the challenged plea. However, Suggs did not establish an infringement of his rights or a procedural irregularity in the taking of the pleas. Therefore, the burden of proving the constitutionality of the plea did not shift back to the State. Following Ms. Prudhomme’s testimony, an unrecorded bench conference was held, after which the clerk crossed out case number 08-6038 on the multiple bill as a predicate conviction. The trial judge then found Suggs to be a third felony offender.
After reviewing the foregoing law and the evidence, we find that the trial judge did not err by finding defendant to be a third felony offender.
li4In the alternative, defense counsel argues Suggs had ineffective assistance at trial because trial counsel raised no objection when the trial court began the multiple bill hearing immediately after the plea of not guilty was entered to the multiple bill. Further, it is asserted that trial counsel was ineffective for the failure to object to the enhanced sentence and for not filing a motion to reconsider the sentence.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel.[33] A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington.[34] Under the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense.[35] This requires showing that counsel’s errors were so serious as to deprive *826 the defendant of a fair trial, a trial whose result is reliable.[36] The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[37]
Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than On direct appeal, so as to afford the parties an adequate record for review.[38] However, when, as here, the record contains sufficient evidence to rule on the merits of the claim | ¡¡¡and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.[39]
In response to defense counsel’s assertions regarding ineffective assistance of counsel, the State asserts that the argument presented by counsel lacks any particular objections that Suggs was not able to raise by proceeding straight to the multiple bill hearing. Therefore, the State contends that there is no proof of the second prong of Strickland,[40] i.e., that Suggs was prejudiced so as not to have received a fair hearing. With respect to the excessive sentence claim, the State responds that this Court has reviewed sentences for constitutional excessiveness even when a defendant has failed to file a motion to reconsider sentence and/or to state a general objection. Therefore, the State argues that Suggs has not been prejudiced by his trial counsel’s failure to object to the sentence or to file a motion to reconsider sentence.
We find the State’s argument convincing given the applicable jurisprudence. This assignment is without merit.
Defense counsel also asserts the trial court vacated the incorrect sentence before imposing sentence on the multiple bill. A review of the transcript and minute entry disproves that assertion.
In brief to this Court, Suggs assigns four additional errors not previously discussed in this opinion. Suggs argues two motions to suppress identity should have been granted. Suggs contests the use of the photo lineup in the identification process. He argues that his photo was taken without his permission during an illegal stop. Suggs also argues the officer mistakenly identified him as the individual who sold the drugs.
116Prior to trial, Suggs filed two motions to suppress the identification. In those motions, he argued that the identification evidence was illegally and unlawfully obtained, and that the identification procedure was so suggestive that it tainted the identification and led to mistaken identification.
Agent Wally Davis testified at the suppression hearing that he prepared a photographic lineup by obtaining the suspect’s name, retrieving five other “AFIS” pictures of individuals who looked similar to the suspect, and putting them together. He testified that afterward he showed the photographic lineup to Agent Gueldner, who positively identified subject number *827 three. On cross-examination, Agent Davis corrected himself and stated that Agent Gueldner had positively identified subject number five, the photograph he signed, and not subject number three. Agent Davis explained that, although he might have previously said number three, he did not look at the number, but he meant the agent positively identified the picture that was signed. Agent Davis further testified that Agent Gueldner put his initials (SC for Sammy Curtis, his undercover name) next to the photographs that were not the suspect. Agent Davis asserted that he did not threaten, force, or coerce Agent Gueld-ner into selecting Suggs’ picture.
There were no arguments by counsel following Agent Davis’ testimony at the suppression hearing. After listening to the testimony, the trial judge denied the motion, stating “there were clearly no constitutional violations in connection with the lineup, or the identification.”
Suggs did not argue in the trial court that his detention for a field interview was not proper, that he did not give his consent to having his picture taken, that the agent did not advise him of the reason for the detention or of his Miranda [41] rights, or that his detention was a custodial interrogation. On appeal, a defendant is |17limited to the grounds for objection that he articulated in the trial court and a new basis for the objection may not be raised for the first time on appeal.[42] As such, we find Suggs is precluded from now raising those issues on appeal. However, in his written motions to suppress identification, Suggs did raise the issue that the identification should be suppressed because it was suggestive and unreliable. Therefore, those claims are properly before this Court.
The trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression.[43] To determine whether the trial court’s denial of a motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial.[44]
A defendant challenging an identification procedure has the burden of proving the identification was suggestive and there was a substantial likelihood of mis-identification as a result of the identification process.[45] An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the accused.[46] Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process.[47]
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admis *828 sibility of identification testimony.[48] Factors to consider in assessing the reliability of an identification 1^include: (1) the witness’ opportunity to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.[49]
After reviewing the photographic lineup, we find that it was not suggestive. The lineup shows that all six African-American males had similar hairstyles, facial hair, and facial features. The lineup also shows that all of the men wore white T-shirts, and the backgrounds of the photographs were similar. The lineup did not unduly focus attention on Suggs.
Suggs argues that the photographic lineup was unduly suggestive in that the agent only identified him because his signature was beneath his picture. However, the testimony at the suppression hearing indicates that the agent signed the lineup after he viewed it, and not before. Suggs also argues that the agent only gave a general description of the suspect and provided no information about the suspect’s age or facial features and that he was only accused of the crime because he was wearing clothing similar to that worn by the suspect. We have already considered and dismissed those arguments in our discussion on the sufficiency of evidence.
Suggs contends that the agent misidentified him during the suppression hearing when the agent said that Suggs’ picture was in the third position when, in fact, it was in the fifth position. However, the agent explained during cross-examination that he was mistaken about the number, and the agent had positively identified Suggs.
In light of the foregoing, we find the trial judge did not err by denying the motion to suppress identification.
119In his third assignment of error, Suggs asserts the district attorney used improper methods calculated to produce a wrongful conviction. Specifically, Suggs argues that the prosecutor told the jury the wrong standard of proof during jury selection and opening statements. He contends the prosecutor erroneously said that nobody could ever prove that a person is 100 percent guilty and that anything over 50 percent is guilt beyond a reasonable doubt. Suggs further contends that those statements were structural errors and that the State lowered the standard of proof. He also asserts that a “plain error statement” occurred when the prosecutor asked Agent Davis if he would expect to find marked money days after the sale, even though the prosecutor knew Suggs was searched for marked money an hour and nine minutes after the sale. Suggs admits his counsel did not object to these statements.
The record reflects that voir dire and the prosecutor’s opening statement were not transcribed. Therefore, Suggs’ allegations regarding the prosecutor’s remarks cannot be confirmed or denied, and it is unknown whether any objections were made to the prosecutor’s alleged remarks. However, the jury charges show that the jury was advised as follows with respect to reasonable doubt:
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt[.]
*829 The burden is upon the state to prove the defendant’s guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, then you must find him not guilty.
While the state must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.
In State v. Jefferson,[50] this Court upheld an almost identical charge on reasonable doubt and found that it was not unconstitutional. Additionally, in the instant case, the jury was instructed that the statements and arguments made by the attorneys were not evidence, and that the opening statements and the closing arguments were not to be considered as evidence.
With respect to the “plain error statement,” the record reflects that, during the prosecutor’s redirect examination of Agent Davis, the following exchange occurred: “Q. Was he [defendant] arrested on the day of the incident? A. No, it was much later. Q. Would you expect to find any money on him if it was done days later? A. No.”
Defense counsel did not object to these questions and, therefore, he cannot raise this issue on appeal.[51] Nevertheless, even if this issue is considered, there was nothing objectionable about these questions and responses. Defense counsel was simply eliciting testimony to show that the agent would not expect to find marked money on someone who was arrested days after a narcotics transaction. We find no merit in this assignment.
In his fourth assignment of error, Suggs makes a claim of malicious prosecution. The basis for this claim is the photograph taken of him that has already been the discussion of a prior assignment of error and has no merit.
In his final assignment, Suggs argues that his counsel was ineffective because she refused to investigate his alibi defense, and she refused to talk to his friends in order to present evidence of his good character to counter the impression that he was a drug dealer.
121 There is no way for this Court to know whether Suggs had an alibi, whether he told his counsel he had an alibi, and, if he did so, why his counsel did not present an alibi defense at trial. Accordingly, we find the appellate record is inadequate for this Court to address this claim, and that would be best addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing could be conducted.[52]
This record has been reviewed for errors patent.[53] Upon review we find it necessary to remand the matter to the trial court with orders for correction of the following matters:
Initially, we find the trial court failed to correctly advise Suggs of the time for fil *830 ing post-conviction relief. The commitment shows that the trial judge advised Suggs he had “two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief.” However, the transcript reflects that, after subsequently imposing the enhanced sentence, the trial judge told Suggs he had “two years after the judgment of conviction of [sic] sentence to within which to file for post-conviction relief.” The transcript prevails.[54] The trial judge’s advisory is incomplete because it did not advise Suggs that he had two years after judgment of conviction and sentence become final in which to seek post-conviction relief.[55]
Therefore, we remand this matter to the trial court with instructions to inform Suggs of the prescriptive period set forth by La.C.Cr.P. art. 930.8, by sending written notice to him within ten days of the rendition of this opinion and toj^flle written proof in the district court record that Suggs has been given such notice.[56]
Additionally, the commitment reflects that the trial judge ordered the enhanced sentence to run concurrently with any sentences Suggs[57] was currently serving; however, the transcript is silent on this point. The transcript prevails. Therefore, it is ordered that the district court correct the commitment to delete the reference that the sentence should be served concurrently with any other sentence Suggs was currently serving.[58] We further order the district court to direct the clerk of court to transmit the original of the corrected commitment to the officer in charge of the institution to which the Suggs has been sentenced.[59]
For reasons set forth in this opinion, we affirm the convictions and sentence from which Suggs appeals. Further, we remand this matter to the trial court for actions in accordance with the instructions in this opinion.

AFFIRMED AND REMANDED WITH INSTRUCTIONS

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed first.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. La. R.S. 15:438.

. State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

. La. R.S. 40:981.3(E).
(1) Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.
(2) A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.

. La. 40:981.3(C)(2).

. State v. Billard, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1072, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739.

. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.

. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

. See, State v. Williams, 04-1016 (La.App. 5 Cir. 3/29/05), 901 So.2d 527, 529-32, writ denied, 05-1080 (La.12/9/05), 916 So.2d 1056.

. Suggs also argues that the record does not show that the trial judge took cognizance of the sentencing criteria set forth in La.C.Cr.P. art. 894.1. Suggs did not raise this issue in the trial court. Therefore, he is precluded from raising this issue on appeal. State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 796, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666.

. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.

. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4.

. Id.

. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130.

. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.

. Id. at 656.

. La. R.S. 40:981.3(E).

. La. R.S. 40:981.3(E)(1); La. R.S. 40:967.

. La. R.S. 40:967(C).

. La. R.S. 15:529.1(A)(l)(b)(i); La. R.S. 40:981.3(E)(1); La. R.S. 40:967(B)(4)(b).

. La.C.Cr.P. art. 555; State v. Lewis, 97-1244 (La.App. 3 Cir. 3/6/98), 728 So.2d 1, 16-17, writ denied, 98-977 (La.9/18/98), 724 So.2d 752.

. La.C.Cr.P. art. 841; State v. Lewis, supra.

. State v. Shelton, 621 So.2d 769, 779-80 (La.1993); State v. Thomas, 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 378, writ denied, 07-0464 (La. 11/21/07), 967 So.2d 1153. The State must also prove that the prior convictions fall within the ten-year cleansing period prescribed by La. R.S. 15:529.1(C). State v. Guillard, 04-899 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1072, writ denied, 05-1381 (La. 1/13/06), 920 So.2d 233.

. State v. Thomas, 06-654 at 7, 951 So.2d at 378.

. State v. Shelton, 621 So.2d 769, 779-80 (La.1993).

. State v. Shelton, 621 So.2d at 779-80.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. State v. Shelton, supra, at 780.

. State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 582.

. Id. at 582-83.

. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599.

. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63 (citing Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064).

. Id.

. Id.

. State v. Robertson, 08-297 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, writ denied, 08-2962 (La. 10/9/09), 18 So.3d 1279.

. State v. Grimes, 09-2 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 594.

. State v. Williams, 10-51 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471, writ denied, 10-2083 (La.2/18/11), 57 So.3d 330.

. Id.

. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).

. State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801, 812, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).

. State v. Hurd, 05-258 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570, writ denied, 06-1128 (La. 11/17/06), 942 So.2d 530, 570.

. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

. Manson v. Brathwaite, 97 S.Ct. at 2253.

. 03-820 (La.App. 5 Cir. 1/27/04), 866 So.2d 931, 941, writ denied, 04-727 (La. 9/24/04), 882 So.2d 1166.

. La.C.Cr.P. art. 841.

. State v. Robertson, supra.

. See, La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Welland, 556 So.2d 175 (La.App. 5 Cir.1990).

. State v. Lynch, 441 So.2d 732, 734 (La.1983).

. State v. Ridgley, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 703, writ denied, 09-0374 (La. 11/6/09), 21 So.3d 301.

. State v. Fazande, 05-901 (La.App. 5 Cir. 3/28/06), 927 So.2d 507, 513-14.

. State v. Lynch, 441 So.2d at 734.

. State v. Shannon, 04-1361 (La.App. 5 Cir. 4/26/05), 902 So.2d 519, 524.

. State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).