ROBERT A. CHAISSON, Judge.
| ¡.Defendant, Larry St. Amant, Jr., appeals his convictions and sentences for various narcotics offenses. For the reasons that follow, we affirm defendant’s convictions and sentences, as amended, and remand the matter for correction of errors patent as noted herein.

PROCEDURAL HISTORY

On October 22, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant with eight counts of distribution of cocaine, in violation of LSA-R.S. 40:967 A (counts one, two, three, five, six, seven, nine, and eleven), and three counts of distribution of heroin, in violation of LSA-R.S. 40:966 A (counts four, eight, and ten). Defendant pled not guilty and thereafter proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury, on April 10, 2014, found defendant guilty as charged.
|aOn April 21, 2014, the trial court sentenced defendant, on each count, to imprisonment at hard labor for twenty years, with the first five years to be served without benefit of parole, probation, or suspension of sentence. In addition, the trial court ordered defendant’s sentences to be served concurrently and imposed a fine of one thousand dollars.
The State thereafter filed a multiple offender bill of information on count four alleging defendant to be a second felony offender. After a hearing, the trial court found defendant to be a second felony offender, vacated its previously imposed sentence on count four, and resentenced defendant, pursuant to LSA-R.S. 15:529.1, *538 to imprisonment for thirty years in the Department of Corrections, to be served without benefit of probation or suspension of sentence. Defendant now appeals.

FACTS

This case involves eight separate purchases of narcotics by Mary Clare Ula-siewicz, an undercover agent for the Jefferson Parish Sheriffs Office, who used the name Tammy Smith to hide her identity.[1] At trial, Agent Smith testified about the details of the transactions which occurred over the course of approximately one month.

June 25, 2013

As Agent Smith was driving on Bengal Road in River Ridge on June 25, 2013, she was flagged down by a black male who identified himself as “Wu” and asked her “what [she] was looking for.” Agent Smith replied that she was looking for a “forty.” Wu then asked Agent Smith to use her phone so he could call his “boy.” Wu dialed phone number (504) 231-9916, and after a brief conversation [¿with the recipient of the phone call, he told Agent Smith to meet him on the next street over, Providence Lane.
Agent Smith drove to that location, parked on the street, and observed Wu knocking on the front door of a house located at 307 Providence. At that time a second black male, who identified himself as “Fresh,” exited the house and approached the agent’s vehicle with Wu. Fresh engaged Agent Smith in conversation while Wu approached a tan SUV that had driven up and stopped a couple of houses down on Providence Lane. Although Agent Smith could not see the driver of the tan SUV, she observed the driver roll down the window when Wu approached. Wu then walked back to Agent Smith with two rocks of crack cocaine for which she paid him forty dollars. After this transaction, Wu walked back to the SUV, and Agent Smith left the area.
A short time later, Agent Smith received a phone call from the number Wu had previously dialed. The caller identified himself as “LaLa” and asked Agent Smith if Wu had given her “[his] s* *t.” After Agent Smith confirmed that she had received it, LaLa stated that “his s* *t was good and to hit him up later.”

June 26, 2013

The following day, June 26, 2013, Agent Smith called LaLa at (504) 231-9916 and asked for more crack cocaine. LaLa told the undercover agent to call him when she was close to the River Ridge area. When Agent Smith called LaLa at the same phone number, he asked her how much money she had on her. After informing him that she had sixty dollars, he instructed her where to stop her vehicle. Agent Smith observed the tan SUV with a temporary tag containing numbers 155[2] and a black male, whom she believed to be LaLa, with “ear-toj3houlder”5 hair and possibly a hooded jacket, inside the vehicle. A second black male exited the SUV, approached her vehicle, identified himself as Craig, conducted the drug transaction, and then returned to the SUV.

July 3, 2013

Agent Smith arranged for a third undercover purchase on July 3, 2013. On that day, the undercover agent called LaLa at (504) 231-9916 and arranged to buy sixty *539 dollars worth of crack cocaine. When Agent Smith entered the River Ridge area, she received a phone call from LaLa setting np the deal; however, Craig was the individual who exited the passenger side of the SUV and brought the crack cocaine to Agent Smith. After the transaction Agent Smith asked Craig for some “dog food,” which is a street term for heroin. Craig gave her his phone number (338-1247), but Agent Smith never called him because she knew Craig was not the supplier and that LaLa was “always the one setting up the deal, calling to confirm the deal.” A few moments after the transaction was conducted with Craig, LaLa called Agent Smith to inform her that he had heroin available for purchase.

July 10, 2013

Officer Smith again called LaLa. at (504) 231-9916 on July 10, 2013, to set up a transaction to purchase sixty dollars worth of crack cocaine and forty dollars worth of heroin. Once she arrived in the River Ridge area, Agent Smith called LaLa, parked her vehicle near an empty lot on Providence Lane, and then waited for a few minutes. The tan SUV pulled up next to Agent Smith’s passenger side window, at which time the driver lowered his window and instructed her to “back up.” After the SUV backed up, Agent Smith likewise backed up.
|fiAt that time, a black female, whom Agent Smith had previously seen walking through a nearby empty field, stood between her vehicle and the SUV.[3] LaLa handed the female the crack cocaine and heroin, and the female handed the narcotics to the undercover agent through the passenger side window. Agent Smith gave the money to this female, who then handed it to LaLa. During this transaction, which occurred during daylight hours, Agent Smith, for the first time, was able to get a profile view of LaLa’s face. She described him as “a black male with very short, if not bald, hair” who “had thick, white rim sunglasses on with a little bit of scruff on his face.”
Following this transaction, Sergeant Corey Wilson of the Jefferson Parish Sheriffs Office followed the tan SUV to a gas station. From his location, Sergeant Wilson observed the driver exit the vehicle and enter the convenience store. Sergeant Wilson immediately recognized the driver as Larry St. Amant because they “grew up in church together from small kids.”

July 12, 2013

On this occasion, Agent Smith once again called LaLa at the same phone number arid asked him for forty dollars worth of heroin and sixty dollars worth of cocaine. Since Agent Smith’s vehicle was being repaired, she took a taxicab, being driven by Agent Leon James, to the meeting site in River Ridge. While Agent Smith was in the cab, LaLa called her and told her “Craig got it,” and directed her to Craig’s location. When the cab pulled up to Craig’s location, Agent Smith observed the SUV drive away. Agent Smith believed that she “spooked” LaLa when she approached in a cab with another person because LaLa “usually stays close ... to keep an eye on the transaction to make sure he gets his money.” After buying the heroin and crack cocaine from Craig, Agent Smith received a 17phone call from LaLa informing her that she owed him twenty dollars because she had received sixty dollars worth of heroin, not forty, as she had thought. Officer Smith returned in the cab and gave Craig an additional twenty dollars.

*540
July 17, 2013

On this date, as was her usual procedure, Agent Smith called LaLa at the same phone number and asked for crack cocaine and heroin. However, LaLa informed her that he did not have any heroin at that time. Agent Smith then drove to the River Ridge location, and while on her way, LaLa called her to see if she was close to the River Ridge area. Once she arrived, Craig exited the passenger side of the tan SUV and conducted the actual narcotics transaction with Agent Smith.

July 22,2013

Similar to the other transactions, on July 22, 2013, Agent Smith called LaLa at (504) 231-9916, asked for crack cocaine, and told him that she would call when she got close to the River Ridge area. Once she arrived at the meeting place, Agent Smith observed LaLa back the SUV into a driveway located on Providence Lane, which was later determined to be the home of defendant’s father. Craig, who was in the driveway, walked over to the tan SUV and then proceeded to the agent’s car. Craig gave Agent Smith crack cocaine, and Agent Smith gave Craig forty dollars. Craig then walked back to the SUV.

July 23, 2013

The final narcotics transaction occurred on July 23, 2013, during daylight hours.[4] On that date, Agent Smith called LaLa at (504) 231-9916 and arranged to purchase one hundred dollars worth of crack cocaine and sixty dollars worth of heroin. LaLa himself conducted this hand-to-hand drug transaction. According to | «Agent Smith, LaLa walked up to the driver’s side window of her car and stood within one foot of her. Agent Smith testified that she knew it was LaLa because she was on the phone with him approximately thirty seconds before, and he said, “I’m right here, you see me. I see you.” Agent Smith further testified that she got a good look at defendant during this transaction even though he was biting the collar of his shirt and wearing sunglasses. Later that night, Agent Smith was shown a photographic lineup from which she identified defendant as the man she knew as LaLa. Based on this positive identification, as well as other information obtained during the course of the investigation, an arrest warrant was issued for defendant. He was arrested on September 24, 2013.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Michel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable *541 doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
| ^Defendant herein does not contend that the State failed to prove the essential statutory elements of the crimes for which he was convicted. Rather, he contends that the evidence was insufficient to prove his identity as the perpetrator of the offenses. To support his argument, defendant points out that Agent Smith only got a good look at defendant once, at which time his face was obscured by a t-shirt and sunglasses. Defendant further notes that Agent Smith’s identification of him was based almost entirely on his “cauliflower” ears, which defendant claims is a common condition. Defendant also points to the fact that Agent Smith admitted that her earlier descriptions of defendant were inaccurate. For the reasons that follow, we find no merit to defendant’s arguments.
Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misiden-tification in order to carry its burden of proof. State v. Ray, 12-684 (La.App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La.10/25/13), 124 So.3d 1096. Positive identification by one witness is sufficient to support a conviction. State v. Suggs, 11-64 (La.App. 5 Cir. 12/13/11), 81 So.3d 815, 821, writ denied, 12-0054 (La.4/20/12), 85 So.3d 1269.
Despite the alleged problems with Agent Smith’s identification testimony, we find that the State proved beyond a reasonable doubt the identity of defendant as the perpetrator of these offenses. At trial, Agent Smith testified about the circumstances surrounding the eight undercover narcotics purchases. According to Agent Smith, on June 25, 2013, she was flagged down by a man who identified himself as “Wu” and asked her “what [she] was looking for.” Agent Smith told Wu that she was looking for a “forty,” and he thereafter used her phone to call his “boy.” After calling (504) 231-9916, Wu instructed the undercover agent to meet |inhim on Providence Lane. While there, Agent Smith observed Wu approach the driver of a tan SUV. Wu walked back to Agent Smith with two rocks of crack cocaine for which she paid him forty dollars. Wu then went back to the SUV with the money. A short time later, Agent Smith received a phone call from the number Wu had previously called. The caller identified himself as “LaLa” and told Agent Smith that his “s* *t” was good and to call him if she needed more.
According to Agent Smith, she arranged the subsequent drug transactions by calling LaLa directly at (504) 231-9916. She testified that the person she spoke to was the same each time. After informing LaLa of the narcotics she wanted to purchase, Agent Smith would proceed to the River Ridge area and call him when she was close. Once in the area, Agent Smith would drive to the meeting place, at which time the transaction would take place with the facilitation of a middleman. This third person would either exit the passenger side of the tan SUV with the drugs or approach the tan SUV and retrieve the drugs from the driver. This individual would bring the drugs to Agent Smith and then bring the money back to the driver of the SUV. The final transaction on July 23, 2013, was different, however, because LaLa conducted the transaction himself.
In two of the earlier transactions, Agent Smith described LaLa as having ear-to-shoulder hair. However, she admitted that these earlier descriptions were inaccurate as she did not get a good look at LaLa because of the distance of the SUV from her and the SUV’s tinted windows. *542 In a later transaction, on July 10, 2013, she was able to get a profile view of LaLa’s face when he pulled up next to her passenger side. At this time, Agent Smith described LaLa as “a black male with very short, if not bald, hair” who “had thick, white rim sunglasses on with a little bit of scruff on his face.” In the final transaction on July 23, 2013, which LaLa conducted himself, Agent Smith was able to get a good look at him. Even |nthough he was biting the collar of his shirt and wearing sunglasses, Agent Smith could see that he had “a large forehead with very little hair and a wide-set nose.” In addition, she noticed that he had “possibly big lips,” a “weird shape” to his ears, and a tattoo on his arm. Latfer that evening, Agent Smith was shown a photographic lineup, and she immediately identified LaLa based in part on the shape of his ears.
In his appellate brief, defendant suggests that Agent Smith’s testimony was insufficient to prove defendant’s identity as the perpetrator of the offenses. However, the jury was presented with additional evidence regarding defendant’s identity.
Mr. Craig Jackson testified that on five of the eight undercover buys (June 26, July 3, July 12, July 17, and July 22), he was the middleman who would retrieve the drugs from defendant and sell them to Agent Smith. Specifically, Mr. Jackson testified that (504) 231-9916 was defendant’s phone number and that he would act on defendant’s behalf by picking up the drugs from defendant in the Trailblazer and delivering them to the undercover agent.
With respect to the undercover buys that took place on July 10, 2013, and July 22, 2013, Sergeant Wilson testified that he followed the Trailblazer from the site of the drug transactions. Sergeant Wilson testified that he was able to clearly identify defendant as the driver of the SUV having known defendant on a personal level for many years. He also observed defendant drive to his house on South Sibley and park his SUV, which was registered to defendant’s girlfriend, in the driveway.
The jury heard the testimony presented at trial regarding the identity of the distributor and obviously found that the evidence pointing to defendant as the distributor of the cocaine and heroin with regard to the eight undercover buys | ^conducted was credible. It is the fact-finder’s function to determine the weight of the evidence bearing on the defendant’s identification. State v. Duronslet, 11-486 (La.App. 5 Cir. 1/24/12), 87 So.3d 112, 118, writ denied, 12-0472 (La.9/12/12), 98 So.3d 815. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 985 So.2d at 240.
Viewing the evidence in a light most favorable to the prosecution, we find that the State sufficiently negated any reasonable probability of misidentification, and a rational trier of fact could have found, beyond a reasonable doubt, that defendant was the distributor of the cocaine and heroin in the charged offenses. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his' next assigned error, defendant argues that the trial court erred in denying his request to call the undercover agent at the hearing on his motion to *543 suppress identification. As a result, defendant asserts that he was prevented from effectively confronting the charges against him and was deprived of a fair hearing on the motion to suppress.
Prior to trial, defendant filed a motion to suppress identification on the basis that the identification procedure was unduly suggestive. At the beginning of the hearing on this motion, the State noted its intent to call Detective Stacey Taranto, the officer who presented the photographic lineup to the undercover agent, as a witness. The State maintained that for security purposes it would not call the 1 isundercover agent because she was still employed in that capacity and continued to actively work investigations. Defendant responded that he had subpoenaed the undercover agent and wanted to call that person as a witness because the agent was involved in the transactions with defendant and provided a description of him. The trial court elected to hear the testimony of Detective Taranto prior to ruling on defendant’s request to call the undercover agent as a witness at the hearing.
At the hearing Detective Taranto testified about her involvement in the investigation of defendant, including her presentation of the photographic lineup to the undercover agent. Detective Taranto explained that the undercover agent would usually purchase the narcotics from defendant through a middleman; however, defendant conducted the last transaction himself. She noted that during this last transaction, which occurred in daylight hours, the undercover agent had the opportunity to get a good view of defendant’s face, despite his attempt to partially obscure his face by biting on his shirt and wearing sunglasses.
On the date of the last drug transaction, Detective Taranto compiled a photographic lineup to show to the undercover agent. At the suppression hearing, Detective Tar-anto testified as to her additional investigation that led to the development of defendant as a suspect. However, Detective Taranto, at no time, informed the undercover agent of her findings. Detective Taranto thereafter showed the lineup to the agent and asked her if she recognized any person displayed. The undercover agent immediately identified defendant and signed her name, date, and time next to defendant’s photograph. Detective Tar-anto stated that she did not, in any way, suggest to the undercover agent who to pick out from the lineup. In addition, Detective Taranto did not promise her anything for her identification and did not force or coerce her in any way to make an identification.
luFollowing defendant’s cross-examination of this witness, as well as arguments by counsel, the trial court, based on the evidence presented, found no reason to require the undercover agent to testify at the suppression hearing and further denied the motion to suppress on the basis that the identification procedure was not unduly suggestive.
Defendant now complains that the trial court erred in failing to require the presence of the undercover agent at the pretrial hearing on his motion to suppress. He contends that he was prevented from effectively confronting the charges against him and was deprived of a fair hearing on the motion to suppress. He maintains that during the suppression hearing, the State was allowed to introduce the hearsay testimony of Detective Taranto as a substitute for the testimony of the confidential informant who actually participated in undercover buys and who identified defendant in a photographic lineup. For the reasons that follow, we find no merit to these arguments.
*544 The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. The Louisiana Supreme Court has held that the defendant’s constitutional confrontation rights are not affected by questioning at a motion hearing. In State v. Hams, 08-2117 (La.12/19/08), 998 So.2d 55, 56, the Supreme Court specifically held that “[t]he right to confrontation contained in the United States and the Louisiana Constitutions is not implicated in this pre-trial matter.” The Supreme -Court has reaffirmed this principle on several occasions. See State v. Weathersby, 09-2407 (La.3/12/10), 29 So.3d 499, 501; State v. Taylor, 09-2341 (La.2/5/10), 26 So.3d 776. Thus, defendant’s right to confrontation was not implicated in this pretrial motion hearing.
| ^Furthermore, although the undercover agent did not testify at the suppression hearing, the officer who conducted the photographic lineup did. Detective Taranto testified regarding the undercover operation, the investigation that led to the development of defendant as a suspect, the description of the perpetrator given by the undercover agent, and the identification procedure undertaken. Defendant had every opportunity to question this witness about the identification in an attempt to show that it was unduly suggestive. As noted by the trial court, there was no indication from the evidence presented at the suppression hearing that the identification procedure was suggestive and thus no reason to compel the presence of the undercover agent at the pretrial hearing. In refusing to require the agent’s presence, the trial judge commented that there has been no “suggestion that the undercover witness would offer any other evidence which would suggest suggestiveness based upon the previous officer’s testimony, other than a mere speculation that they might have something to offer.” As further noted by the trial court, this mere speculation that the undercover agent may hold some additional information was not a sufficient reason to compromise the safety of the agent or the active investigations engaged in by that undercover agent.
Lastly, we note that the undercover agent testified at trial. Defense counsel had the opportunity at that time to confront and cross-examine the undercover agent with respect to the drug transactions, her ábility to view defendant, her descriptions of the perpetrator, and the identification procedure. In fact, during the trial, defendant re-urged his motion to suppress, and it was again denied.
Accordingly, for these reasons, we find that the trial court did not err in refusing defendant’s request to call the undercover agent as a witness at the suppression hearing. This assigned error is likewise without merit.
I ^ASSIGNMENT OF ERROR NUMBER THREE
In this assigned error, defendant contends that the sentences imposed by the trial court were excessive.
Defendant was convicted of eight counts of distribution of cocaine, and according to LSA-R.S. 40:967(B)(4)(b), faced a sentencing range of two to thirty years imprisonment at hard labor, with the first two years being served without benefit of parole, probation, or suspension of sentence. Defendant was also convicted of three counts of distribution of heroin, and pursuant to LSA-R.S. 40:966(B)(1), faced a sentencing range of five to fifty years imprisonment at hard labor, with at least five years being served without benefit of probation or suspension of sentence. Defendant received twenty-year sentences on all *545 counts to be served at hard labor. With regard to one of the distribution of heroin convictions (count four), defendant was adjudicated a second felony offender. As such, defendant faced a possible sentencing range of twenty-five to one hundred years imprisonment and received a thirty-year sentence without benefit of probation or suspension of sentence. Defendant was sentenced to thirty years at hard labor without benefit of probation or suspension of sentence.
Defendant now contends that the sentences imposed by the trial court are excessive. Specifically, defendant asserts that the sentences imposed are disproportionate to the alleged offenses and to defendant’s criminal history. He notes the small quantity of narcotics bought during each transaction as well as the non-violent nature of the offenses. Defendant further complains because the trial court failed to consider any mitigating circumstances, such as the fact that defendant has two small children.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A 117sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Warmack, 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, and not whether another sentence might have been more appropriate. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461, 462 (per curiam).
In the present case, we find that the trial court did not abuse its broad discretion in sentencing defendant to imprisonment at hard labor for twenty years on counts one through three and five through eleven. When imposing these sentences, the trial court considered the severity of the crimes and the number of counts involved. The court further noted that it had considered the testimony of the witnesses at trial and took into consideration both mitigating and aggravating factors. The facts presented at trial demonstrated that defendant sold drugs persistently through the use of several middlemen. We also note that defendant had a prior conviction for possession of cocaine, that defendant faced possible thirty-year sentences on his distribution of cocaine convictions and possible fifty-year sentences on his distribution of heroin convictions, and that defendant’s sentences were imposed concurrently.
11sMoreover, a review of similar cases indicates that the sentences imposed are not excessive. For example, in State v. Collins, 09-283 (La.App. 5 Cir. 12/8/09), 30 So.3d 72, writ denied, 10-0034 (La.9/3/10), 44 So.3d 696, this Court found the trial court did not abuse its discretion in sentencing the defendant to thirty-five years at hard labor for possession of heroin with intent to distribute it from a hotel room, and in denying the defendant’s motion to reconsider sentence. Likewise, in State v. Jones, 48,505 (La.App. 2 Cir. 11/20/13), 128 So.3d 622, 626, the second circuit found the *546 defendant’s concurrent twenty-year sentences for two counts of distribution of cocaine and one count of distribution of marijuana were not excessive considering the defendant’s criminal history and the imposition of the sentence within the mid-range of the statutory limits.
We now turn our attention to defendant’s enhanced sentence of thirty years on count four. Subsequent to the imposition of his enhanced sentence, defendant filed a motion to reconsider sentence. Both in his written motion to reconsider sentence and at the subsequent hearing on the motion, defendant urged that his sentence was excessive based on several mitigating circumstances and requested that the trial court sentence him to the minimum sentence of twenty-five years. In requesting a reduction in sentence, defense counsel noted that defendant has no history of violent offenses and further noted that defendant, who is thirty-six years old, has two small children, and he is an integral part of their lives. He also noted that defendant had periods of time in which he was gainfully employed as a mechanic. In considering the factors brought to its attention, the court denied defendant’s motion to reconsider sentence and noted that it had considered the appropriate factors under the Code of Criminal Procedure in imposing the thirty-year sentence. The trial court further noted that the sentence imposed was significantly less than the maximum possible sentence.
liüWe find that the trial court did not abuse its broad discretion in sentencing defendant to thirty years of imprisonment on count four as a second felony offender and in denying his motion to reconsider sentence. Defendant had a prior conviction for possession of cocaine, which apparently escalated into an organized drug distribution business. Moreover, defendant received a sentence that was significantly less that the maximum possible sentence of one hundred years. See State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 398, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234 (where the appellate court held that two concurrent fifty-year sentences at hard labor were not excessive as to the defendant who was sentenced as a second felony offender on two counts of attempted possession with intent to distribute heroin, noting that the sentences fell within the lower part of the possible sentencing range of twenty-five to one hundred years and that the defendant was previously convicted of two drug offenses).
Accordingly, we conclude that the trial court did not abuse its sentencing discretion and that defendant’s sentences were not excessive. The arguments raised by defendant in this assigned error are likewise without merit.

ERRORS PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals errors that require correction.
We first note that the trial court improperly restricted benefits when sentencing defendant to twenty years on each of the eleven counts. On original sentencing, defendant was sentenced on each of the eleven counts to twenty years of imprisonment at hard labor with the first five years to be served without benefit of parole, probation, or suspension of sentence. Defendant’s convictions on the Lneight counts of distribution of cocaine, under LSA-R.S. 40:967(B)(4)(b), only provide for a restriction of parole, probation, or suspension of sentence for the first two years. Further, defendant’s convictions on the three counts of heroin, under LSA-R.S. *547 40:966(B)(1), only provide for a restriction of probation and suspension of sentence for at least five years. Accordingly, we amend defendant’s sentences to reflect that only two years of the sentences imposed on his distribution of cocaine convictions (counts one, two, three, five, six, seven, nine, and eleven) are to be served without benefit of parole, probation, or suspension of sentence. We further amend defendant’s sentences to delete the prohibition of parole eligibility on two of his sentences imposed on his distribution of heroin convictions (counts eight and ten)[5] and direct the trial court to correct the commitment in conformity therewith. LSA-C.Cr.P. art. 882; State v. Richard, 12-310 (La.App. 5 Cir. 4/24/13), 115 So.3d 86, 94, writ denied, 13-1220 (La.12/2/13), 126 So.3d 497.
In addition, we note that the State of Louisiana Uniform Commitment Order reflects only one of the dates of the offenses for which defendant was convicted. Specifically, the uniform commitment order reflects the June 26, 2013 offense date, which is the date count one was committed. The record fails to indicate the dates on which the remaining counts were committed: June 25, 2013 (count eleven), July 3, 2013 (count two), July 10, 2013 (counts nine and ten), July 12, 2013 (counts three and four), July 17, 2013 (count six), July 22, 2013 (count five), and July 23, 2013 (counts seven and eight). Moreover, while the uniform commitment order correctly reflects the date of original sentencing, it does not reflect the date of the multiple bill resentencing on count four. To ensure accuracy in the record, we remand this case for correction of the uniform commitment order to reflect all of the dates of the offenses and the date of the multiple bill sentencing. I^We direct the trial court to make the appropriate entries, as noted in this errors patent review, on the uniform commitment order and direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant had been sentenced and to the Department of Corrections’ Legal Department. See LSA-C.Cr.P. .art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
Accordingly, for the reasons set forth herein, defendant’s convictions and sentences, as amended, are affirmed. This case is remanded for correction of the uniform commitment order as noted herein.

CONVICTIONS AND SENTENCES, AS AMENDED, AFFIRMED: REMANDED WITH INSTRUCTIONS.

. Throughout this opinion, the undercover agent will be referred to as Agent Smith.

. The temporary plate on this SUV, a Chevrolet Trailblazer, was registered to Danielle Bannister, defendant’s girlfriend, with a listed address on Plantation Street in Kenner which was found to be associated with defendant.

. Agent Smith testified that there were different numbers on the SUV's temporary tag.

. At trial, Agent Smith explained that this was the last narcotics transaction she conducted because her undercover investigation was compromised when LaLa heard her relay information over the radio to other officers.

. The original sentence on count four was vacated, and an enhanced sentence was imposed on that count. Therefore, it is not necessary to correct the original sentence on count four,